MARY JARDIN *v.* MABEL C. DOUCET.

No. 2355.

SUBMITTED OCTOBER 10, 1938.          DECIDED NOVEMBER 2, 1938.

PETERS AND KEMP, JJ., AND CIRCUIT JUDGE BROOKS
IN PLACE OF COKE, C. J., ABSENT.

OPINION OF THE COURT BY KEMP, J.

This is a bill in equity brought by Mary Jardin against Mabel E. Doucet, respondent, for specific performance of an alleged agreement to purchase a parcel of real estate situated in the City of Honolulu.

The alleged agreement which petitioner seeks to have specifically performed is evidenced by the following document:

"Honolulu, T. H., July 6th 1937

"Received from Mrs. Mabel E. Doucet the sum of Twenty five dollars ($25.00) on account of the purchase price of Thirty six hundred and fifty dollars ($3650.00) for the following described property (including all rights, easements and appurtenances now used or enjoyed in connection therewith and all articles listed on the reverse side of this receipt), situate in the City and County of Honolulu, Territory of Hawaii, to wit: 3 B/rm 2 story house

located at 1240 Kinau St. Tax Key being 2—4—11—33 having a land area of 4500 sq. ft.

(s) P. G. Jardin

"The balance of the purchase price is to be paid as follows, to wit:

"$325.00

~~$650.00~~ including this initial payment of $25.00 Balance in $100.00 per. month including 6% interest per annum.

"Payments due—Aug. 1937.

"AND IT IS HEREBY AGREED:

"FIRST—That in the event said Purchaser shall refuse to pay the balance of said purchase price or complete said purchase as herein provided, the Seller may:

(a) Bring an action for damages for breach of contract;

(b) Tender a duly executed deed to the Purchaser and sue him for the balance of the purchase price;

(c) Retain the initial payment as liquidated damages.

"SECOND—That in the event the title to said property shall not prove merchantable and said Seller shall not perfect, or be able to perfect the same within a reasonable time from this date, the Purchaser shall have the right of demanding and receiving back said initial payment and shall be released from all obligation hereunder.

"THIRD—That in the event the improvements on said described premises are destroyed or materially damaged between the date hereof and consummation of this purchase, this contract shall at the Purchaser's election immediately become null and void and said initial payment shall be returned to said Purchaser on demand.

"FOURTH—That the current taxes, insurance premiums, water rates, rents, improvement assessments and other expenses of said property shall be pro-rated from date of delivery of deed or final contract of sale.

"FIFTH—That the property is sold subject to the approval of the owner.

"SIXTH—That the evidence of title is to be in the form of Certificate of Title issued by a recognized and competent searcher of titles and to be furnished and paid for by the Seller.

"SEVENTH—That this contract shall be binding when signed by the parties hereto. Necessary documents to complete this transaction shall be drawn and signed within thirty (30) days, unless this time is extended by mutual consent.

————————————————————, Owner.

By Ellis Charles Duncan

Agent (Realtors)

(s)    William H. Kam

Purchaser and Seller sign reverse side of sheet also.

Purchaser        (s)      Mabel E. Doucet.

Husband-Wife        ————————————————

Residence and P. O. Address      2217 Manukai St.

Telephone Number, Residence 92138.    Business

"I agree to sell the above described property on the terms and conditions herein stated, and agree to pay the above agent as commission the sum of One hundred and fifty dollars ($150.00) or one-half of the initial payment in case I exercise option (c), provided the same shall not exceed the full amount of the commission.

Purchaser and Seller sign reverse side of sheet also.

Seller          (s)      Phillip G. Jardin

Husband-Wife      (s)      Mary Jardin."

On the reverse side of the foregoing appears a more complete description of the property, a list of articles excluded and included, a statement of the expenses to be borne by the seller and the buyer, which statement is signed as follows:

"Buyer  (s)  Mabel E. Doucet
Seller  (s)  Phillip G. Jardin."

The allegations of the bill are in substance that on July 6, 1937, petitioner was the owner in fee simple of the parcel of land (describing it) ; that on said date for a valuable consideration the respondent agreed to purchase from the petitioner the said land and improvements for $3650 and at said time paid on account of said purchase price the sum of $325 and agreed to pay on account of the balance $100 per month, together with interest at six per cent per annum, all as set forth in the memorandum attached, marked exhibit "A" and made a part of the petition. Exhibit "A" is a copy of the above agreement. It is further alleged that the respondent, though well able to perform said agreement, refused to execute an agreement of sale in accordance with the contract made and entered into on the 6th day of July, 1937, and still refuses and neglects to execute the said contract or perform the same; that petitioner has vacated said premises in accordance with said contract and has been and now is ready and willing and able to execute the said agreement of sale in accordance with said contract and to perform the same. The prayer is for a decree directing and commanding the respondent to specifically perform the contract between petitioner and respondent as set forth herein and for such other and further relief as to the court may seem just and equitable.

In answer to this bill the respondent admitted that on the 6th day of July, 1937, petitioner was the owner in fee simple of the parcel of land described; denied that on the 6th day of July, 1937, or at any time respondent agreed to purchase from petitioner the said piece of land for $3650 or for any other sum; denied that she paid on account of the purchase price the sum of $325 or agreed to do anything other than those things specified in the contract annexed to said petition as exhibit "A"; admitted

that she refused to execute a contract of sale but denied that she refused to execute any contract of sale in accordance with the contract annexed to said petition; denied that petitioner is now or at any time was ready, willing and able to execute an agreement of sale in accordance with the said contract or at all or to perform the same. For further answer the respondent alleged that at no time has there been a tender of deed to the respondent by the petitioner or anyone in her behalf in accordance with the terms of said contract or at all. She further alleged that she did enter into a contract, a copy of which is annexed to said petition, and that in accordance with the terms of said contract it was agreed between the contracting parties thereto that the contract of sale mentioned therein should be executed within thirty days from the date of the execution of said contract and that the premises would be maintained by the seller during the period between the execution of the contract sued upon herein and the execution of a purchase agreement and that the said premises would be kept in good condition and not allowed to suffer material damage. She further alleged that at the time of the execution of exhibit "A" the premises involved were in good, rentable condition with a well-kept yard and that between the date of the execution of the contract and the 16th day of July, 1937, the owner of said property moved out of said premises and allowed the same to be materially damaged, fixtures and shelving stripped from the walls of the kitchen, to which they had been permanently affixed, that wainscotting was torn from the walls, door trim torn off and damaged, a number of window shades torn off, removed and destroyed, light fixtures damaged, wall paint scarred and scratched and the shrubbery and plants in the yard broken, torn up and removed and allowed to die for want of irrigation, so that said premises were not in condition for occupancy by human beings nor were they

rentable at all. Respondent further alleged that she made a down payment of $325 on account of said contract, which sum has not been returned to her in accordance with the terms of said contract. The prayer of the respondent is that she be awarded a decree in the sum of $325, costs and attorneys' fees, to be determined by the court.

At the trial the original of exhibit "A" was admitted in evidence without objection and the realtor who negotiated said agreement and the petitioner both testified without objection that said agreement had been negotiated between petitioner and respondent. The agreement of sale which was prepared by the realtor and presented to the respondent for her signature within thirty days after July 6, 1937, was also introduced in evidence without objection. It is not disputed that the agreement of sale was presented to the respondent for her signature and that she declined to execute it, giving as her reason that the premises had been materially damaged subsequent to the contract of July 6, 1937. There is no evidence that she assigned any other reason for refusing to execute the contract. Most of the evidence relates to the issue of material damage to the premises after July 6, 1937. The evidence as to the extent of said damage is conflicting. The circuit judge decided that such damage as was shown was not material and without any evidence whatever as to the monetary amount of the damage ordered respondent to specifically perform her agreement to purchase said property but awarded her a deduction of $25 from the purchase price. From this decree the respondent has appealed and has argued three propositions, as follows: (1) that oral evidence is not competent to alter the terms of the written agreement, being petitioner's exhibit "A," and that the circuit court therefore erred in holding that the contract was one between the petitioner and respondent when by its expressed terms it was between Phillip G. Jardin and respondent;

(2) that this suit for specific performance is fatally defective because there is no mutuality between petitioner and respondent and the circuit court therefore erred in denying the respondent's motion to dismiss at the close of petitioner's evidence and further in holding that such mutuality existed; (3) that petitioner has failed to satisfy the statute of frauds because the memorandum of the contract, being petitioner's exhibit "A," does not designate the petitioner therein as a party to said contract and the circuit court therefore erred in holding that the statute of frauds was satisfied.

The circuit judge disposed of practically the same contentions by holding that there was mutuality of contract between the petitioner and respondent notwithstanding petitioner, by signing as she did, wrongfully represented her husband Phillip G. Jardin as the real party in interest for, as he reasoned, a court of equity would not allow an owner to hide behind and take advantage of her own wrong to defeat the contractual rights of the purchaser and that therefore the petitioner's signature on the contract satisfied the statute of frauds.

The three propositions now argued by appellant are so related that they may well be considered together.

The statute of frauds provides that no action shall be brought and maintained upon any contract for the sale of lands, tenements or hereditaments or of any interest in or concerning them unless the promise, contract or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and be signed by the party to be charged therewith, or by some person thereunto by him in writing lawfully authorized. (R. L. 1935, § 3900.) Notwithstanding this statute a contract for the sale of land executed by an agent of the owner in his own name as vendor and by the vendee in person may be enforced by bill for specific performance by the owner

against the vendee and parol evidence is admissible to prove that petitioner·was the owner and that the one who executed the contract as vendor acted with her authority and that she had complied with the terms of the contract. (*Davidson* v. *Hurty* 133 N. W. [Minn.] 862.)

*Ford* v. *Williams,* 21 How. (62 U. S.) 287, upholds the principle announced above in the following language: "The contract of the agent is the contract of the principal, and he may sue or be sued thereon, though not named therein; and notwithstanding the rule of law that an agreement · reduced to writing may not be contradicted or varied by parol, it is well settled that the principal may show that the agent who made the contract in his own name was acting·for him. This proof does not contradict the writing; it only explains the transaction. But the agent, who binds himself, will not be allowed to contradict the writing by proving that he was contracting only as agent, while the same evidence will be admitted to charge the principal. 'Such evidence (says Baron Parke) does not deny that the contract binds those whom on its face it purports to bind; but shows that it also binds another, by reason that the act of the agent is the act of the principal.' (See Higgins *v*. Senior, 9 Meeson and Wilsby, 843.)"

On the question of what it takes to satisfy the statute of frauds the court, in *Ford* v. *Williams, supra,* said: "It is not necessary to the validity of a contract, under the statute of frauds, that the writing disclose the principal. In the brief memoranda of these contracts usually made by brokers and factors, it is seldom done. If a party is informed that the person with whom he is dealing is merely the agent for another, and prefers to deal with the agent personally on his own credit, he will not be allowed afterwards to charge the principal; but when he deals with the agent, without any disclosure of the fact of his agency, he

may elect to treat the after-discovered principal as the person with whom he contracted."

In *People's I. & R. Co.* v. *Haw. Electric Co.,* 9 Haw. 434, it was held that the signature of the defendant, whether vendor or vendee, is sufficient under the provisions of the statute of frauds. Counsel for respondent-appellant undertakes to distinguish that case from the case at bar by asserting that the contract here involved is a contract between Phillip G. Jardin and the respondent and not between the petitioner and respondent whereas in *People's I. & R. Co.* v. *Haw. Electric Co., supra,* the written offer was by the defendant and the oral acceptance was by the plaintiff.

In the case at bar there was no allegation that Phillip G. Jardin was the agent of the petitioner Mary Jardin. Such allegation, however, is not necessary to the admission of such proof. As heretofore stated, petitioner testified that she was the owner of the property involved; that she entered into the arrangement to sell to Mrs. Doucet; that she signed exhibit "A" and that her husband was present when the arrangement was made. This evidence indicates that she understood her signature to be an acceptance of respondent's offer to purchase. The realtor who negotiated with the respondent also testified that petitioner Mary Jardin was the owner of the land and that the negotiations which he conducted were between respondent and petitioner. Nowhere does it appear, however, that Mrs. Doucet was told or that she knew that Mrs. Jardin and not her husband was the owner of the land or that the realtor or Mr. Jardin was acting for petitioner. In fact it seems clear that Phillip G. Jardin, by conduct though not by word, represented himself as the real party to the agreement and that in the same manner, that is, by signing as wife of the seller, the petitioner made the same representation.

We think, however, that the evidence in this case establishes that the petitioner, by signing exhibit "A" as she did, intended to and thought she had accepted in writing the offer of respondent to purchase the land in question and thereby bound herself to perform. It is argued, however, that her act of joining with her husband in signing exhibit "A" as they did, he opposite the word "seller" and she opposite the word "wife," had the legal effect of making her husband the real party to said contract and takes the case out of the parol evidence rule above announced. If the contract had been signed just as it is signed except that petitioner's signature was omitted therefrom there would be slight question of her right to sue on the contract and show by oral testimony that her husband was merely her agent.

It is true that some courts have denied the right of an undisclosed principal to sue upon the contract where the agent expressly asserts that he is the principal. (*Humble* v. *Hunter,* 12 Adolphus & Ellis [N. S.] [Q. B.] 310; *Sladovich* v. *Glaser,* 150 La. 918, 91 So. 297.) However, Williston, the eminent author, in his treatise on contracts, says that such holding is inconsistent with the general rule since it must be equally true in any case where the agent does not disclose that he is an agent that the third party enters into the contract on the assumption that the agent is the principal. (1 Williston on Contracts [Rev. ed.], § 286.) In some of the cases denying the right of the principal to sue on a contract made by the agent in his own name the other party to the contract had, before the contract was made, expressed an unwillingness to contract with the principal. (*Winchester* v. *Howard,* 97 Mass. 303.) Also some of the cases so holding are not applicable because of the motive for the contract as where the defendant had dealt with the agent only, so that by giving him orders he might get payment of a debt the agent owed him. (44 Harv. L. Rev. 1271.) Many

other circumstances not present in this case have been referred to by courts denying to undisclosed principals the right to sue on contracts made by agents in their own names.

In the case at bar the respondent has shown no objection to contracting with petitioner. In fact the evidence fails to disclose that she was interested in the identity of the person with whom she was contracting or that there were other circumstances, such as we have referred to, present in this case.

We therefore fail to see any reason why the general rule, to the effect that an undisclosed principal may sue on a contract made by his agent in his own name and show the agency by parol, should not be applied in this case.

Counsel argued in his opening brief that there was want of mutuality of contract between petitioner and respondent whereas in his reply brief he admits that by the bringing of the suit he creates the mutuality of remedy necessary to sustain it. Assuming, but not deciding, that there was, prior to the filing of the bill herein, want of mutuality of remedy, we find it well-settled that mutuality of remedy is made unnecessary by the provisions of our statute of frauds.

In the case of *People's I. & R. Co.* v. *Haw. Electric Co., supra,* it was assumed that there was a want of mutuality of remedy, for petitioner in that case had orally accepted a written offer of the respondent to exchange leases and could not have been compelled to perform. Yet this court compelled the respondent who made the written offer to perform. On the question of the effect of want of mutuality of remedy this court said: "The disadvantage resulting from want of mutuality of remedy is not so great as might at first appear, for neither party will be compelled to perform until the other has performed or satisfied the court that he will perform. * * * But the disadvantage, such as

it is, results from the statute, which must be followed until altered by the legislature."

We conclude that parol evidence was competent to establish that the agreement, exhibit "A," was between petitioner and respondent and that such evidence did not vary the terms of the written agreement but merely explained the transaction; that the statute of frauds has been satisfied and that want of mutuality of remedy, if it existed, is not fatal to the validity of a contract to purchase land.

The decree appealed from is affirmed.